**DARROW, Plaintiff, v. FIFTH THIRD UNION TRUST COMPANY, Executor, etc., et, Defendants.**

Common Pleas Court, Hamilton County.

No. A-137519.   Decided November 30, 1954.

304

H. G. Hightower, Hightower & Fisher, Cincinnati, for plaintiff.
Bruce I. Petrie, John W. Warrington, Graydon, Head & Ritchey, Cincinnati, for defendants.

## OPINION

By HESS, J.

This cause came on to be heard on the pleadings, evidence, stipulation of facts, arguments and briefs of counsel.

The action is for a declaratory judgment in which the plaintiff

seeks the determination of this court concerning her rights in personal property held by the defendant, The Fifth Third Union Trust Company, under an amendable trust agreement executed by the plaintiff's husband prior to his death. Generally, the plaintiff maintains that by reason of her election not to take under her husband's last will and testament, she is entitled to share in the assets of said **inter vivos** trust.

The defendants deny the plaintiff is entitled to invade the trust.

Specific issues will be discussed in this opinion.

At the hearing, counsel for the parties offered the following stipulation of facts:

"It is hereby stipulated and agreed by and between the plaintiff and the defendants, by their respective attorneys, and the following stipulated facts may be admitted in evidence, subject, however, to the general objections of any party as to competency, materiality and/or relevancy:

"1. That the plaintiff, Florence C. Darrow, is the surviving spouse of Eleazar Darrow, deceased.

"2. That Eleazar Darrow was the settlor under a trust agreement known as Trust Number L-3030, entered into with The Fifth Third Union Trust Company, trustee, on October 4, 1937, a true copy of which trust agreement with amendments thereto is attached to plaintiff's petition.

"3. That Eleazar Darrow upon the creation of said trust deposited with The Fifth Third Union Trust Company, trustee, certain property to be held under the provisions of said trust agreement, which property, and the market value thereof at the date of the creation of said trust, was as follows:

| | |
|---|---|
| 33,000 U. S. 2 ¾%—9/15/47 @ 102 12/32 | $33,783.75 |
| 1,000 U. S. 2 7/8%—3/15/60 @ 100 12/32 | $1,003.75 |
| 60 Cincinnati Gas & Electrict Company 5% pfd. @ 100 | $6,000.00 |

Total market value _____$40,787.50

"4. That Eleazer Darrow was married to Madelyn Darrow at the time of the execution of said trust agreement.

"5. That Madelyn Darrow died on November 29, 1940.

"6. That the plaintiff and Eleazar Darrow were married at Cincinnati, Ohio on June 7, 1941.

"7. That Eleazar Darrow died September 10, 1952 and was domiciled in Miami, Florida at the time of his death.

"8. That the last will and testament of Eleazar Darrow was admitted to probate by the Probate Court of Hamilton County, Ohio on October 27, 1952, under the provisions of §10504-15 GC (§§2107.11, 2107.12 R. C.), a true copy of which last will and testament is attached to plaintiff's petition.

"9. That defendant, The Fifth Third Union Trust Company, qualified in said Probate Court of Hamilton County, Ohio as executor of the estate of Eleazer Darrow on October 27, 1952.

"10. That said executor filed with said Probate Court an inventory of said estate on October 31, 1952, listing personal properties with a total value of $1,288.38 as the sole assets of said estate.

"11. That plaintiff made no objections to the inventory of said estate as filed by the executor with said Probate Court.

"12. That said Probate Court under the provisions of §10509-78 GC (§2117.23 R. C.), set off to plaintiff $1,800.00 as her year's allowance, $1,000.00 of which has been paid to plaintiff by said executor.

"13. That the executor has in its possession only enough assets to pay proper fees and costs chargeable to said estate, and does not have in its possession sufficient assets to pay in full the year's allowance set off to the plaintiff.

"14. That said executor and the appraisers of said estate did not set off to plaintiff 20% of the assets of the estate.

"15. That on October 31, 1952, plaintiff filed with said Probate Court an election not to take under the last will and testament of her deceased husband, under the provisions of §10504-55 GC (§2107.39 R. C.)

"16. That Eleazar Darrow made withdrawals of assets from said trust as follows:

| | |
|---|---:|
| May 17, 1939 Eleazar Darrow withdrew | $2,197.50 |
| August 24, 1939 Eleazar Darrow withdrew | 1,084.69 |
| February 15, 1941 Eleazar Darrow withdrew | 1,080.94 |
| May 15, 1949 Eleazar Darrow withdrew | 1,080.69 |
| July 20, 1944 Eleazar Darrow withdrew | 5,000.00 |
| August 18, 1945 Eleazar Darrow withdrew | 3,003.75 |
| September 6, 1951 Eleazar Darrow withdrew | 1,000.00 |
| Total withdrawals _____ | $14,447.57 |

"17. That upon the death of Eleazar Darrow, plaintiff became entitled to the income for life under said trust agreement, and that the market value of the trust assets at the time of Eleazar Darrow's death was $28,753.84.

"18. That The Fifth Third Union Trust Company, trustee, pursuant to authority given in said trust agreement, paid claims from the principal of said trust as follows:

| | |
|---|---:|
| November 3, 1952 Agnes Smart, Nursing Eleazar Darrow | $ 24.00 |
| November 3, 1952 Murphy's Pharmacy—medicine | 11.37 |
| November 21, 1952 John R. Harding, M. D. | 214.00 |
| December 1, 1952 W. Mack Johnson—funeral | 881.52 |
| | $1,130.89 |

"19. That plaintiff was born February 12, 1892.

"20. That the value of plaintiff's life estate in said trust at the time of Eleazar Darrow's death, based upon the American Experience Table of Mortality and computing interest at the rate of 4% per annum on the value of the trust assets, less the claims referred to in Item 18 above, was $10,285.68.

"21. That The Fifth Third Union Trust Company, trustee, pursuant to the provisions of said trust agreement, has paid to plaintiff the total sum of $1,587.82, in monthly installments, said amount being the income of said trust from the date of Eleazar Darrow's death, less proper charges thereon.

"22. That decisions of the Florida courts, as reported in the official Reports thereof, may be offered in evidence merely by submission of the book and page number thereof."

The last will and testament of Eleazar Darrow reads as follows:

"I, Eleazar Darrow, being now a resident of the City of Cincinnati, Hamilton County, Ohio, being of full age, sound and disposing mind and memory and under no restraint or disability of law whatsoever, do hereby make, publish and declare this my last will and testament, expressly revoking all former wills and codicils by me made.

"ITEM I. To my wife, Florence C. Darrow, if living at the time of my death, I bequeath the sum of Four Thousand ($4,000.00) Dollars provided she is willing to accept the same in lieu of her right to a year's allowance under §10509-74 GC of the present Ohio Laws (§2117.20 R. C.), and in lieu of her right to property exempt from administration under §10509-54 GC of the present Ohio Laws (§2115.13 R. C.), and in lieu of all other claims against my estate. I make no further provisions for my wife because I believe that she has sufficient property of her own to care for her needs.

"ITEM II. To my granddaughter, Nancy Townsend, if living at the time of my death, I bequeath my diamond ring.

"ITEM III. To my daughter, Virginia Darrow Mays, if living at the time of my death, I bequeath any automobiles that I may then own, all my household goods, personal effects, and jewelry, with the exception of the diamond ring bequeathed to my granddaughter as hereinabove provided.

"ITEM IV. I direct my executors to pay the sum of Three Hundred Dollars ($300.00) to the Forest Hills Cemetery of Ann Arbor, Michigan, for the perpetual care of the family lot which is in the name of my grandfather, Robert Barry.

"ITEM V. All the remainder of my estate, real, personal and mixed of whatsoever nature and wheresoever situated, I devise and bequeath to The Fifth-Third Union Trust Company of Cincinnati, trustee under an agreement executed by me on October 4, 1937, and modifications of said trust agreement made by me March 29, 1944, and August 4, 1947. Said trustee shall add the property received by it under said trust agreement, and shall thereafter hold and administer all of said property in accordance with the terms of said trust agreement and modifications thereof hereinabove referred to.

"ITEM VI. I hereby appoint the Fifth-Third Union Trust Company, of Cincinnati, Ohio, as executor of this my last will and testament.

"I request that no inventory be made of my personal effects and household furnishings.

"IN WITNESS WHEREOF, I have hereunto set my hand this 4th day of August, 1947.

Eleazar Darrow"

On October 4, 1937, Eleazar Darrow, then domiciled in Ohio, entered into a trust agreement with The Fifth-Third Union Trust Company. This trust agreement was amendable at the option of Eleazar Darrow, and pursuant to such option the trust agreement was amended on No-

vember 5, 1941, on December 3, 1943, on March 29, 1944, and on August 4, 1947.

The trust agreement remained amendable by Eleazar Darrow up to the time of his death on December 10, 1952.

In essence the trust agreement as amended, at the time of the death of Eleazar Darrow, provided that his widow, Florence C. Darrow, would receive a life estate consisting of income from the corpus of the trust; that upon the death of the survivor of Eleazar Darrow and his wife, but not before specific payments provided for in the trust, such as expenses incident to his death and debts, the trustee would pay the corpus of the estate to the Board of Regents of the University of Michigan, Ann Arbor, Michigan, to be used by the Board of Regents of said university for the benefit of students of that university who may be in need of financial aid.

It will be observed from the stipulation of facts that Eleazar Darrow died on September 10, 1952; that he was domiciled and a resident of Miami, Florida on the date of his death; that his last will and testament was offered for and admitted to probate by the Probate Court of Hamilton County, Ohio, on October 27, 1952, under the provisions of §10504-15 GC (§2107.11 R. C.); that The Fifth Third Union Trust Company qualified as executor of the estate of Eleazar Darrow on October 27, 1952; that the executor filed an inventory of the estate on October 31, 1952, listing personal properties with a total value of $1,283.38 as the sole assets of the estate; that no objection was filed to the inventory; that the Probate Court of Hamilton County set off to plaintiff $1,800 as her year's allowance, and the executor has paid $1,000 of said allowance; and that on October 31, 1952, the plaintiff filed her election not to take under the will of her deceased husband.

Sec. 10504-15 GC (§2107.11 R. C.), provides as follows:

"A will shall be admitted to probate:

"(A) In the county in which the testator was domiciled if, at the time of his death, he was domiciled in this state;

"(B) In the county of this state where any real or personal property of such testator is located if, at the time of his death, he was not domiciled in this state, and provided that such will has not previously been admitted to probate in this state or in the state of such testator's domicile."

Sec. 10511-13 GC (§2129.11 R. C.), provides:

"If no domiciliary administration has been commenced, the ancillary administrator shall proceed with the administration in Ohio as though the decedent had been a resident of Ohio at the time of his death."

There is no evidence in this record of any administration of Eleazar Darrow's estate in Florida before his last will and testament was offered for probate in Hamilton County, Ohio; nor is there any evidence that there has been any administration of his estate in Florida since the probate of his will in Hamilton County, Ohio.

It must be concluded that the proceedings in the Probate Court of Hamilton County are in fact an original ancillary administration in pursuance of §10511-13 GC (§2129.11 R. C.) and §10504-15 GC (§2107.11 R. C.).

It therefore follows that since the estate is to be administered the same as if Eleazar Darrow had died domiciled in Ohio, the law of Ohio governing the probate of estates, including the statutes of descent and distribution, will be applicable.

It is well settled in Ohio that an amendable trust may be invaded, and under such a trust agreement settlor does not part absolutely with the domination of such property, and if his widow elects to take under the statute of descent and distribution she may assert her right to a distributive share of the property in such trust at settlor's death. **Bolles v. Toledo Trust Co., 144 Oh St 195, 29 O. O. 376; Harris v. Harris, 147 Oh St 437, 34 O. O. 371.**

Counsel for defendants argue that the law established in the Bolles and Harris cases is not in keeping with general law and that they should be reconsidered. However, those cases must be followed by this court until the Supreme Court of Ohio sees fit to change its pronouncement.

The law at this time appears to be that the validity of an **inter vivos** trust is determined by the law of the situs of the trust, which, in the instant case, is the state of Ohio. Restatement of Trusts, Section 294; Hutchinson v. Ross, 262 N. Y., 38, 187 N. E., 65; 89 A. L. R., 1007-1023; **Girard Trust Co. v. Dunham, 29 O. O. 324.**

Having determined the wife of the deceased Eleazar Darrow is entitled to invade the amendable trust created by the deceased, three questions are presented: First, is the balance due on the widow's year's allowance to be paid from the corpus of the trust and before her distributive share under statute of descent and distribution? Second, is the widow entitled to receive the income from the remaining assets in the trust after her distributive share of one half of the corpus of the trust has been paid to her? And, third, what disposition is to be made of the balance of the trust funds after the widow's claims have been satisfied?

These questions will be determined as they appear.

**First.** This question appears to be answered in the second syllabus of **Davidson v. Trust Company, 129 Oh St 418, 2 O. O. 404,** which reads as follows:

"The widow's year's allowance and the allowance given her under §10509-54 GC (§2115.13 R. C.), are a debt and preferred claim, respectively, against her deceased husband's estate, deductible before a determination of the share of the estate to be taken by the widow 'under the statute of descent and distribution.'"

It is the contention of the executor herein that since there are not sufficient funds in the estate outside the trust fund to pay the first year's allowance, the widow is a mere creditor to that extent, and that creditors are not permitted to invade an amendable trust after the death of the settlor. The case of **Schofield, Trustee v. Cleveland Trust Company, 135 Oh St 328, 14 O. O. 224,** would appear to support that conclusion if no fraud is shown. There is no fraud alleged or proven in the instant case.

However, the Bolles and Davidson cases, supra, have different views. The Davidson case refers to the widow's year's allowance as a "preferred claim" "deductible before a determination of the share of the estate to

be taken by the widow under the statute of descent and distribution." The Bolles case holds that "a wife's right to elect to take under the law places her in a higher position than a mere creditor in respect to the personal property in an unrevoked revocable trust" and therefore the case of Schofield, Trustee v. Cleveland Trust Company, supra, has no application to the facts in the Bolles case. The Davidson case was decided on May 8, 1935, the Schofield case was decided May 3, 1938, and the Bolles case was decided on December 6, 1944. The Bolles case was cited with approval in the case of Harris v. Harris, 147 Oh St 437, 34 O. O. 371, decided February 28, 1947.

Under §10504-61 GC (§2107.42 R. C.), a testator may, by express direction in his will, bar the right of his widow to receive one year's allowance for the support of herself and children if she elects to take under the will; but if the will does not contain such express direction, the widow is entitled to her year's allowance.

There is no express direction in the will in the instant case which would bar the widow from her year's allowance in the event of her election not to take under the will.

A study of the cases and statutes referred to would indicate that the balance due on the widow's year's allowance, determined by the Probate Court of Hamilton County, should be paid from the corpus of the trust estate before there is a distribution to the widow of her lawful share of the trust funds under the statutes of descent and distribution.

**Second.** Is the widow entitled to receive the income for life on the balance of the trust estate after she has received her widow's year's allowance and her share under the statute of descent and distribution?

It is well settled in Ohio that if the widow chooses to take her lawful share of an estate and not under the terms of the will, the will ceases to afford her any consideration. No one is permitted to claim under and at the same time adverse to a will. **Bebout v. Quick, 81 Oh St 196; White v. Brocaw, 14 Oh St 339;** Weller v. Weller, 32 N. P. 329; **Davidson v. Miners and Mechanics Savings & Trust Co., 129 Oh St 418, 2 O. O. 404.**

The widow in the instant case is not entitled to receive any income from the funds remaining in the trust estate after she has received the balance of her year's allowance and her distributive share under the statutes of descent and distribution.

**Third.** Having determined the rights of the widow, what disposition is to be made of the balance of the funds in the trust estate?

The doctrine of acceleration of remainders is recognized by the law of Ohio.

The life interest of the widow in the remainder of the trust ceased to exist when she elected not to take under the will.

It is the rule in Ohio that a renunciation by the widow of a life interest given her by the terms of a will is equivalent to its termination by her death, so far as the vesting in possession of a gift is concerned. **16 O. Jur. 493-495, sections 114 to 116.**

It follows that if the widow has no further right to the life income under the trust agreement, the remainder interest of the University of Michigan accelerates and becomes payable immediately.

Having determined the widow is entitled to invade the trust, the questions of by whom and how shall the funds in the trust estate be distributed, are presented.

The executor and trustee herein are one and the same entity. The last will and testament of the deceased recognized his widow may elect not to take under his will when he wrote in his will that "* * * if living at the time of my death, I bequeath the sum of Four Thousand ($4,-000.00) Dollars provided she is willing to accept the same in lieu of her right to a year's allowance * * *, and in lieu of her right to property exempt from administration * * * and in lieu of all other claims against my estate." And the will further provides that all the remainder of the estate of the deceased should be held in trust for the benefit of the University of Michigan.

At the time he made his will the deceased was chargeable with the knowledge that if his widow elected to take under the law of descent and distribution and not under the will, his amendable trust estate would be depleted to the extent determined herein, and the balance due the University of Michigan from the trust would become payable at once by the trustee under the law of acceleration.

The depletion of the trust estate to the extent determined does not invalidate the trust, but merely reduces its funds by operation of law.

Since there is no question concerning the validity of the will, and having determined the trust is valid except the widow's right to such funds in the trust as are necessary to satisfy her year's allowance and her distributive share, it would follow that the balance of the widow's year's allowance and her distributive share, as determined herein, should be turned over to the executor by the trustee for administration, and the balance remaining in the trust estate paid by the trustee to the University of Michigan.

In summation, the court concludes as follows on the issues present:

1. The law of Ohio will be applied in determining plaintiff's right to invade the trust.

2. The plaintiff has the right to invade the trust.

3. The law of Florida is not applicable in determining the issues herein.

4. The law of Ohio governs the share of the trust funds to which the plaintiff is entitled.

5. Plaintiff has the right to collect the balance due on her year's allowance from the corpus of the trust fund and one half of the remainder.

6. The plaintiff is not entitled to collect the income from the remainder of the trust fund after she has collected her year's allowance and her distributive share.

7. The remainder interest in the trust fund after the plaintiff's claims have been satisfied is payable immediately to the University of Michigan.

8. The trustee should pay to the executor the necessary funds required to satisfy the widow's year's allowance and her distributive share, and then pay the remainder to the University of Michigan.

An entry may be presented in accordance with this opinion.